# IN THE UNITED DISTRICT COURT
## FOR THE MIDDLE DISTRICT
## AT NASHVILLE

Anthony Stanton )
    *Plaintiff,* )
)
vs. )    Case No:_____
)
Correct Care Solutions )    **[JURY DEMAND]**
and it's providers: )
Wilkins    Doctor )
Miller    Nurse Practitioner )
Weber    Nurse Practitioner )
Thompson    Nurse Practitioner )
Shodge    Nurse )
Stacy    Nurse )
Julie    Nurse )
Sabrina    Nurse )
Landon    Nurse )
Lt. Slusher    Davidson Co. Sheriff Dept. )
Lt. Shodge    Davidson Co. Sheriff Dept. )
    *Defendants.*

---

## I.
# VERIFIED 42 U.S.C. 1983 CIVIL RIGHTS COMPLAINT

---

Plaintiff **Anthony Stanton**, *pro se*, files this Verified 42 U.S.C. 1983 Civil Rights Complaint against the defendants mentioned herein: Correct Care Solutions [herein **CCS**] Wilkins, Doctor for CCS, Miller, Nurse Practitioner for CCS, Weber, Nurse Practitioner for CCS, Thompson, Nurse Practitioner for CCS, Shodge, Nurse for CCS, Stacy, Nurse for CCS, Julie, Nurse for CCS, Sabrina, Nurse for CCS, Landon, Nurse for CCS, Lt. Slusher, Davidson County Sheriff Department, and Lt. Shodge, Davidson County Sheriff's Department.

All **CCS** defendants mentioned herein are sued in their individual and official capacities for monetary damages, as well as declaratory and injunctive relief. All **CCS** defendants mentioned herein are sued in their individual and official capacities for monetary damages as well as declaratory and injunctive relief. Defendants Lt. Slusher and Lt. Shodge of the Davidson County Sheriff Department **[D.C.S.O.],** are sued in their personal capacity for monetary damages, as well as declaratory and injunctive relief.

**1**

**Defendant:**     Correct Care Solutions is sued for $100,000.00 for Nominal Damages,
$50,000.00 for Punitive Damages and
$75,000.00 for Declaratory Damages

**Defendant:**     Wilkins is sued for $25,000.00 for Nominal Damages,
$20,000.00 for Punitive Damages and
$25,000.00 for Declaratory Damages

**Defendant:**     Miller is sued for $100,000.00 for Nominal Damages,
$50,000.00 for Punitive Damages and
$75,000.00 for Declaratory Damages

**Defendants:**   Miller, Weber, and Thompson is sued for
$100,000.00 for Nominal Damages,
$50,000.00 for Punitive Damages and
$75,000.00 for Declaratory Damages _each._

**Defendants:**   Lt. Slusher and Lt. Shodge are sued for $25,000.00 for Nominal Damages,
$20,000.00 for Punitive Damages and
$25,000.00 for Declaratory Damages _each._

## II.
## INTRODUCTION

Plaintiff Anthony Stanton is a prisoner presently housed at Northwest Correctional
Complex [herein NWCX] in Tiptonville, Tennessee. On May 4, 2017, while housed at
the Davidson County Sheriff's Office [D.C.S.O] in Nashville, Tennessee, he was treated
for a callus on the bottom of his right foot. Plaintiff is a diabetic and received continuous
improper treatments for months, that caused him to have surgery and ongoing foot pain.
As a result to the wrongful treatments provided by Correct Care Solutions and it's staff,
the plaintiff has suffered from extensive damages with a variety of acute symptoms such
as, but not limited to the following: Inflamed, Swollen, and Infected foot that has caused
the plaintiff difficulties with his walking, injuries to the lining in the plaintiffs foot that
prohibits his natural ability to walk, ongoing pain and suffering causing the plaintiff to
suffer in losing control of his right leg at times, and causing pain and humiliation that the
plaintiff must endure for the rest of his life. Plaintiff's ability to walk is not good. These
debilitating medical injuries force the plaintiff to battle every time he has to walk, due to
the acts and omissions of the defendants mentioned herein, as they refused to comply
with the contract with D.C.S.O., as well as in violation of the Eighth and Fourteenth
Amendment of the Tennessee and United States Constitution.

2

Since CCS is the medical contractor for D.C.S.O., the named defendants mentioned herein have continued to act in defiance of their contract specifically refusing to comply with medical care treatment relevant to this claim, resulting in violations of the plaintiff's Constitutional Rights. Herein lies the basic of this 42 U.S.C. 1983 Verified Complaint.

## III.
## JURISDICTION

This is a civil action for monetary damages, declaratory and injunctive relief, both preliminary and permanent, to redress the violation of rights secured by the Eighth and Fourteenth Amendment of the Tennessee and United States Constitution.

Jurisdiction is invoked pursuant to 42 U.S.C. 1983 and Declaratory and injunctive relief. The actions complained herein occurred at the Davidson County Sheriff's Department in Davidson County, Nashville, Tennessee within the jurisdiction over this **Verified 42 U.S.C. 1983 Civil Rights Complaint** and supplemental jurisdiction over state torts and action for negligence.

## IV.
## PARTIES

**PLAINTIFF:**

(1)     **Anthony Stanton**, is all times herein the plaintiff who is a citizen of the United States of America residing in the State of Tennessee presently confined at Northwest Correctional Complex [hereafter NWCX] in Tiptonville, Tennessee 38079.

**DEFENDANT'S:**

(1)     **Correct Care Solutions** is responsible for providing Medical Providers to inmates throughout the Davidson County Sheriff's Department and to comply with contract agreement to the right medical attention to all inmates at all times, a defendant sued in its official capacity.

(2)     **Dr. Wilkins, is a doctor for CCS,** and is responsible for providing and ensuring the right medical attention for inmates throughout the Davidson County Sheriff's Department, and to comply with contract agreement to honor medical and is at all times herein a defendant sued in official and individual capacity.

(3)     **Miller, Nurse Practitioner for CCS**, is responsible for providing and ensuring the right medical attention for inmates throughout the Davidson County Sheriff's Department, and to comply with contract agreement to honor medical and is at all times herein a defendant sued in official and individual capacity..

3

(4)     **Weber, Nurse Practitioner for CCS,** is responsible for providing and ensuring the right medical attention for inmates throughout the Davidson County Sheriff's Department, and to comply with contract agreement to honor medical and is at all times herein a defendant sued in official and individual capacity.

(5)     **Thompson, Nurse Practitioner for CCS,** is responsible for providing and ensuring the right medical attention for inmates throughout the Davidson County Sheriff's Department, and to comply with contract agreement to honor medical and is at all times herein a defendant sued in official and individual capacity.

(6)     **Shodge, Nurse for CCS,** is responsible for providing and ensuring the right medical attention for inmates throughout the Davidson County Sheriff's Department, and to comply with contract agreement to honor medical and is at all times herein a defendant sued in official and individual capacity.

(7)     **Stacy, Nurse for CCS,** is responsible for providing and ensuring the right medical attention for inmates throughout the Davidson County Sheriff's Department, and to comply with contract agreement to honor medical and is at all times herein a defendant sued in official and individual capacity.

(8)     **Julie, Nurse for CCS,** is responsible for providing and ensuring the right medical attention for inmates throughout the Davidson County Sheriff's Department, and to comply with contract agreement to honor medical and is at all times herein a defendant sued in official and individual capacity.

(9)     **Sabrina, Nurse for CCS,** is responsible for providing and ensuring the right medical attention for inmates throughout the Davidson County Sheriff's Department, and to comply with contract agreement to honor medical and is at all times herein a defendant sued in official and individual capacity.

(10)    **Landon, Nurse for CCS,** is responsible for providing and ensuring the right medical attention for inmates throughout the Davidson County Sheriff's Department, and to comply with contract agreement to honor medical and is at all times herein a defendant sued in official and individual capacity.

(11)    **Lt. Slusher, Employee for D.C.S.O.,** is responsible for accurate treatment to all inmates housed in the Davidson County Sheriff's Office at all times, and herein is a defendant sued in official and individual capacity.

(12)    **Lt. Slusher, Employee for D.C.S.O.,** is responsible for accurate treatment to all inmates housed in the Davidson County Sheriff's Office at all times, and herein is a defendant sued in official and individual capacity.

4

# V.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES
### Pursuant to PLRA 1987 (e)

Plaintiff filed an Official Inmate Grievance pursuant to 42 U.S.C. 1997 policy against the defendants relevant to this complaint, exhausting his Administrative Remedies. Grievances filed and complaints registered on CCS for their refusal to comply with their contract to provide sufficient medical providers support the actions and or inactions of CCS and the named defendants resulting in Constitutional Violations to humane treatment.


# VI.
## FACTUAL ALLEGATION

(1) CCS and the named defendants actions and or inactions have caused the plaintiff to suffer unnecessarily in their refusal to comply with their contractual agreement to provide sufficient medical providers to all inmates in custody at the Davidson County Sheriff's Department.

(2) CCS and the named defendants actions and or inactions have caused the plaintiff to suffer unnecessarily, as they continued to deny plaintiff proper foot care, causing debilitating life threatening injuries resulting in a severely diminished quality of life.

(3) CCS and the named defendants actions and or inactions have caused the plaintiff to suffer unnecessarily, as they continued to give wrong treatments from May 2017 until August 2017.

(4) CCS and the named defendants actions and or inaction have caused the plaintiff to suffer unnecessarily as they denied medications for the infection and pain from May 2017 until August 2017.

(5) Lt. Shodge and Lt. Slusher and the named defendants actions and or inactions caused the plaintiff to suffer unnecessarily, as they failed to comply with appropriate orders and mandates as issued by the Davidson County Sheriff's Department and Correct Care Solutions.

(6) The defendants mentioned herein repeatedly forced the plaintiff to go without medications for the infection, pain, and swollenness of his foot for a substantial period of time, affecting his physical health and ability to walk.

5

(7)  CCS and the named defendants have caused the Plaintiff to suffer from adequate
     medical treatment in the form of:
(a) unnecessary pain and suffering from lack of proper treatments
(b) unnecessary pain and suffering from physical, emotional, and psychological stress
(c) unnecessary pain and suffering from multiple improper treatments
(d) a severe diminished quality of life

**as a direct result** of the actions and inactions of the named defendants, who are in
violation of my rights and of human decency standards, set forth in *Estelle v. Gamble*,
429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 128 L.
Ed.2d 811, 62 USLW. 4446

## CAUSE OF ACTION

Treatment for callus resulted in permanent damages affecting the plaintiff's ability to
walk normal again. The plaintiff will undergo surgery with the Tennessee Department of
Corrections because of the wrongful and inadequate treatment caused by Correct Care
Solutions. The damage caused by Correct Care Solutions has caused a limit walking
ability for the plaintiff, and affects his ability to walk without suffering, pain, and
humiliation. The defendants mentioned herein, continued to give the plaintiff the same
inadequate treatments that caused the plaintiff to have surgery on his foot and repeatedly
forcing the plaintiff to go without his medications over a substantial period of time,
affecting his physical health, mental health and quality of life, with deliberate and
conscious intent to deprive the plaintiff, Anthony Stanton, of humane treatment as
medical providers, and or caretakers, in violation of the Eighth and Fourteenth
Amendment of the Tennessee and United States Constitution.

## PART 1
### Defendants of Correct Care Solution

Defendants CCS, Wilkins, Miller, Weber, Thompson, Stacy, Julie, Sabrina, and Landon,
employees of CCS, continued to act with deliberate indifference to the plaintiff, Anthony
Stanton, and his medically prescribed treatments as ordered by professional medical
personnel.

The named defendants continued to do the wrong treatments, and at times, no treatments
at all, for months repeatedly and refused to provide the plaintiff with outside medical
professional treatments that was available. The named defendants refused to provide the
right treatments sufficient for proper care, resulting in irreversible physical and
psychological harm in violation of the plaintiff's Eighth and Fourteenth Amendment
Rights secured in the Tennessee and United States Constitution(s).

6

The acts and omissions described herein show how the defendants deliberately continued to act with indifference to the plaintiff and his severe medical condition.

## PART II
### Defendants of Davidson County Sheriff's Department

Defendants Lt. Slusher and Lt. Shodge is responsible for D.C.S.O security at the Davidson County Sheriff's Office. These defendants named herein failed to provide the plaintiff with adequate treatment and assistance, and denied me the opportunity to see CCS Personnel, Doctors, and Nurse Practitioners at appointed times. These defendants also failed to properly carry out the ordered treatments of medical personnel and deliberately continued to act with indifference to the plaintiff and his severe medical condition.

### FACTS IN SUPPORT

In April 2017, I , Anthony Stanton, the plaintiff in the above style case, filed a sick call after I noticed a small hard spot on the bottom of my right foot. A couple of days later, I was examined by Nurse Julie (named in this suit) and she said it appears to be a callus, but wasn't for sure. She said since I was a diabetic, she was going to schedule me an appointment to see the Nurse Practitioner as soon as possible. On May 4, 2017, I was examined by Nurse Practitioner Miller (mentioned in this suit) and he confirmed that it was a callus on my foot. He ordered me treatments that included: Soaking my foot, putting Vaseline on the callus once per day, and wrapping my foot in a bandage. He further stated that the Vaseline would soften the hard skin. The nurses started my treatments and a few days later Nurse Ed did my treatment and they were out of Vaseline, and he put some kind of white medication on my callus. A few days later, more Vaseline was in stock, but I had noticed that my foot was swelling and getting red and the callus was getting splits in it. I asked the nurses why was my foot swelling and getting so red, and they said they did not know. Days continued and I constantly complained to the nurses who carried out my treatments that my foot was starting to swell and that it was steady getting worse. All they would say was: "Mr. Stanton, you are on the list to see the Nurse Practitioner." I would constantly tell them that I needed medication for the pain and infection in my foot. The nurses would tell me that they could not give me anything for my foot until a Nurse Practitioner ordered the medication. Repeatedly, I would tell them that I am a diabetic and feared that I would lose my foot; thus, I would ask them to please treat it properly, as it continued to get worse. I began filling out sick call forms hoping that the right nurse and or administrator would see it, but to no avail. Afterward, weeks went by and I began to notice a very foul odor. I soon discovered that it was coming from my foot. I asked Nurse Landon at diabetic call if he would look at my foot because it had a real bad odor to it. When he looked at it, he noticed the condition, and asked me "how long has this been going on." I told him it has been happening for weeks, and he concurred that the odor was extremely bad and that he'd put my name on the list

7

to see the Nurse Practitioner. I asked him if he could provide me with a pair of crutches (as the facility had them to aid individuals who had difficulty with their walking, etc), and he stated that the doctor would have to issue me the crutches. Nurse Shade done my foot treatment and I asked her why was my foot having a very bad odor. She said it was a fungus from my toe nail and I said I cannot believe you are saying that. I finally received an appointment with the Nurse Practitioner on the same day that I was scheduled for court. I told my pod officer that I cannot go to court because I needed to see the Nurse Practitioner because of the pain, infection, and swelling in my foot. She then called Lt. Slusher and he came and talked with me and I told him that my attorney had rescheduled my court date. He said, "you are on the court docket and you have to go to court." I took off my bandage to show him my foot and he saw the severity of it and said, "I promise you'll see the Nurse Practitioner as soon as you return." When I returned from court, I never saw the Nurse Practitioner. Nurse Sheree was doing diabetic shots and heard me talking to Lt. Slusher. She said, "Mr. Stanton, it is very important that you see the Nurse Practitioner." I told her you heard Lt. Slusher say that I would see the Nurse Practitioner after court, but I didn't see one. I constantly told Lt. Slusher that my health and the severity of my foot was important and that I needed to see the Nurse Practitioner. I asked the pod officer to call medical to see if I could see the Nurse Practitioner after I arrived from court, and it was confirmed that the Nurse Practitioner had already left for the day. Days continued and I constantly complained to all the nurses at treatment time, diabetic calls, and pill call that my foot was hurting me so bad that I could hardly sleep. My foot continued to get so bad I could hardly walk or put any weight on it because of the infection, redness, and swollenness. I seen Nurse Kelly from another facility and I asked her would she please look at my foot. She looked at it and was shocked at the condition it was in. I told her the entire process (including treatment procedures, etc.), and she couldn't believe the swelling and redness had been ignored by the other nurses who done my treatments. She said, "What have the other nurses said?" I told her all they would ever say is that I am on the list to see the Nurse Practitioner. They also said they could not do anything except the treatments that the Nurse Practitioner ordered. Nurse Kelly said she would say something about my foot. I was finally examined by Doctor Wilkins on May 23, 2017. He asked me how long had my foot been like this. I told him it began as a small hard spot on the bottom of my foot. After starting the treatments Nurse Practitioner Miller had put me on, it ended up like this. Doctor Wilkins then put me on some medication for the pain and the infection. He said the odor was coming from the dead skin and that there was an infection in my foot. He also issued me a pair of crutches and a pair of new shoes because my show had blood stains in it and the odor was foul. Nurse Weber seen me on June 5, 2017, and asked me if the infection or pain had gotten any better since I began my medication. I told her it seemed to have gotten a little better, but the swelling was still the same as the infection was still there. She told me that it would take a while for the infection to clear up and that she wanted to get some of the dead skin off my foot to try to force the infection out. She said that the bad odor was coming from both the infection and the dead skin. As she began trying to take the dead skin off, I couldn't stand the pain. I asked her why I couldn't just go to the hospital and they could use proper material to remove the dead skin and infection, and she said that they [CCS]

8

needed to get the infection cleared before they could do anything. She told me that she would see me next week to try and get the rest of the dead skin off, but weeks went by and I never saw a Nurse Practitioner or Doctor any my foot continued to decline. I constantly filled out sick calls, complained, and etc., and they would tell me that I was on the list to see the Nurse Practitioner. I finally was seen by Nurse Christine at diabetic call. Christine looked at my foot and said she couldn't believe the condition it was in. Christine took pictures of my foot and emailed them to the doctor. Nurse Christine told me that I was already on the list to see the Nurse Practitioner and should've seen her a week after June 5th, 2017. I then filed a grievance regarding this and the D.C.S.O agreed/concurred saying, "I should've seen a provider the week after June 5th, 2017," but I never did. On July 4, 2017, I was seen by Nurse Shodge and Nurse Practitioner Thompson. Nurse Practitioner Thompson asked me how long had this been going on. I constantly had to repeat the entire ordeal to her. I asked Nurse Practitioner Thompson to please send me to an outside facility, specialist, or hospital because I was afraid that I would lose my foot because of the improper/lack of treatment given to me by Correct Care Solution. She told me that I would have to wait until the swelling and infection went away. I told her that it didn't make sense because that's what the hospital was there for to help clear up the infection and swelling. Nurse Thompson told me she was going to put me on some more medication for the infection and pain. She told me that I would be seen again next week by a Nurse Practitioner, but I knew it would never happen. I filed an Official Inmate Grievance after I found out I was not on the list to see the Nurse Practitioner, as promised. On 7/13/17, Nurse Weber examined my foot and told me she couldn't believe how bad my foot still was. She said something else had to be wrong because my foot had a real bad fever in it. She tried to cut some more dead skin off, but to no avail due to the pain. I constantly complained and asked her to transport me to the hospital and they kept telling me, "we have to get the infection out here before we can send you." On 7/17/2017, I filed another Inmate Grievance on medical because I never received my insulin and my foot treatment. I told the nurses that Nurse Practitioner Weber raised my insulin and that I was not getting it. I then said something to Nurse Sheree about my insulin and she said she would check my order because they may have overlooked it. On July 28, 2017, I was examined by the Lady Doctor (I didn't get her name, but she sent me to the hospital on 8/2/17) and she was very concerned about my foot being so bad. She asked me how long had my foot been like this. Before I could say anything Nurse Shodge said it really looks better. The Doctor said, "Mr. Stanton, does this look better," and I told her no it does not. I said my foot has looked like this for months. I then told her everything I told the other Nurses, Nurse Practitioners, and Doctors. The Doctor said we cannot do the treatments you need done here, so I am going to send you to the outside Doctor so we can take care of your foot. I said Doctor I have been trying to get them to send me to the outside Doctor and they said they had to get the swelling and infection took care of first. I then thanked her and told her she just blessed me that I had been through so much mental and psychological stress regarding this issue. On August 2, 2017, I was sent to Nashville Medical Foot Care to have surgery. The nurse removed my bandages and asked me "how long had the incident been going on." I told

9

them for months and she said "don't you have medical providers where you are housed?" I told her yes, but they have failed to bring me to the outside hospital. She told me that this is very serious and bad especially that I'm a diabetic. She said let me fo get the doctor and I'll be right back. The doctor came in and examined my foot. He concurred that my foot was extremely bad and said I could suffer now and long term because I was a diabetic. I told him how long my foot had been in this condition and how D.C.S.O and C.C.S had failed to properly care for it. He said that I should have never been ordered such treatments to put anything on my foot or covering it with a bandage. He said that the infection needs moisture and water and that was a big factor in why the infection had never cleared up. He said that the bad odor was coming from the dead skin and the infection, and if I had been treated properly, the odor would have never occurred. He told me that he wanted me to bear with him while he tried to remove some of the dead skin. As he tried to remove it, I could not stand the pain and he agreed that the condition my foot was in, the pain would be intense. Minutes later, he finally got down to the infection after changing objects (objects as in: Doctor tools, Sports/Foot Care Tools, etc.) that would help. After he completed it, my foot felt so much better as the pressure was released. I thanked him and he said he would order me to see him in a few weeks, if not before. He said he wanted x-rays done of my foot to make sure the infections did not make it to the bone. He said where the infections had been there for so long and that improper treatment had been done, the infection could have spreaded and went to a bone, causing damages in the long run. Soon after, I was transported to the Tennessee Department of Corrections. Since my incarceration here at TDOC, I have been transported from my housing facility to Lois Deberry Special Needs Facility to be examined by Doctors regarding my foot. They constantly transport me to outside medical facilities and because my foot was improperly cared for while housed at the Davidson County Sheriff's Office contracted with Correct Care Solution. As of now, the Tennessee Department of Corrections have ordered me surgery for my foot, as treatments were deemed improper and my foot has worsen because of their negligence of Correct Care Solutions and the Davidson County Sheriff's Office. It shall be noted that additional documents will be submitted to this court, as the surgeries and treatments of the plaintiff are ongoing.

**WHEREFORE**, the Plaintiff prays for the following:

(1)    That a declaration be issued that the policies and practices of said defendants as mentioned herein are in violation of the plaintiff's rights under the Eighth Amendment of the U.S Constitution.

(2)    Immediately enjoin the defendants and their agents/employees from continuing to subject plaintiff to the unconstitutional policies and practices described herein;

(3)    Award the plaintiff the costs of this suit and any reasonable attorney fees and litigation expenses pursuant to **42 U.S.C 1988**

(4)    Retain jurisdiction of this case until the defendants have fully complied with the orders of this court and that there is reasonable assurance that the defendant and its agents/employees will continue to comply in the future absent continuing jurisdiction;

**10**

(4)     Retain jurisdiction of this case until the defendants have fully complied with the orders of this court and that there is reasonable assurance that the defendant and its agents/employees will continue to comply in the future absent continuing jurisdiction;

***And***

(5)     All other proper relief, legal or equitable that the court deems just and proper.

I, Anthony Stanton, the plaintiff herein, do hereby swear that all the above statements are true to the best of my knowledge, information, and belief.

Respectfully Submitted,

Anthony Stanton, *pro se*
Northwest Correctional Complex
960 State Route 212
Tiptonville, Tennessee 38079

NOTARY: I, Amanda Hill, a Notary of the State of Tennessee, do hereby verify the identity of Anthony Stanton #208310 on this the 27th day of March, 2018.

Signature of Notary: Amanda Hill My commission expires: 6-27-2021

AMANDA HILL
STATE OF TENNESSEE
NOTARY PUBLIC
COUNTY OF LAKE

12

# DAVIDSON COUNTY SHERIFF'S OFFICE
## INMATE GRIEVANCE FORM
### EL CONDADO DE DAVIDSON LA OFICINA DE SHERIFF
### FORMA DE AGRAVIOS DEL ENCARCELADO

Original/Original ☑

Appeal/ Apelar ☐

Name/Nombre: _Anthony Stanton_          OCA/OCA: _60501_

Facility and Cell/ Facilidad y Celda: _C.D.M. A1 bunk 39_

Rules/ Reglas:

1. Grievances should be submitted within seven (7) calendar days of the occurrence.
Las quejas deben ser sometidas dentro de siete (7) días de calendario de la ocurrencia.

2. The issue being grieved must affect the inmate filing the complaint. If it does not, the grievance will not be processed.
La persona afectada por el incidente es la persona que debe llenar la forma. De no ser así, la queja no será procesada.

3. Duplicate grievances will not be processed. An inmate is allowed to submit no more than one Grievance for an incident.
Más de una queja para el mismo incidente no será procesada. Un preso es permitido someter no más de una Queja por cada incidente.

4. Grievances with vulgar or inappropriate language will not be processed.
Quejas con palabras vulgares o lenguaje inapropiado no serán procesadas.

5. If more than one inmate files a grievance about the same incident, the responses may be consolidated. If so, it will be noted on the response.
Si más de un preso archiva una queja acerca del mismo incidente, las respuestas pueden ser consolidadas. Si eso es el caso, será notado en la respuesta

6. An appeal should be submitted within no more than five (5) days after notification of the original response.
Una apelación debe ser sometida dentro de no más de cinco (5) días después de la notificación de la respuesta original.

7. Grievances and appeals must be placed in the designated grievance box by the inmate.
Las quejas y apelaciones deben de ser colocadas en la caja designada de quejas en la celda.

_Anthony Stanton_                    _6/29/17_

Inmate's Signatura/Firma del encarcelado          Date Signed/Fecha de la firma

Details/ Detalles: _I am writing this grievance because I found out that things already was nose to see the Doctor concerning my right foot. I have diabetes and my foot has been bad for a couple of months at least. I seen the male N.P. and he put me soakin my foot and after soakin my foot he told me No keep Vaseline or maybe some_

kind of lotion on it with Covering
it with a bandaide on it after
soaking it. I done that for over
two weeks and I was showing the
Nurses at treatment time how
bad it was geting doing after
doing what she h/p told me to
do. Several of the nurse said
they could not understand why he
would want me to put the Vaselin
or lotion on it Covering it with
a bandage. I told them I was
going to stop puting the lotion
and bandage on my Feet and the
said to do it that what he order
My Foot got really bad hurting me
all the time and had a real bad
odor to it. The imates got to
saying what that smell when
ever I took my shoes off.
I told the male Nurse that my
Feet was rottening off and show
him and he said it not rottening
its just got a bad odor to it.
I finally got to see a docter
and he said that I should

have never been having the

Vaseline or lotion on it especially
with a bandage on it. I said
why in the world would a M/D
tell me to do this. He never
answered me and told me to keep
Soaking it keeping it dry. He
put me on Crutches and said
he would see me in a Couple of
Weeks. I never seen him again
and finally Seen the lady Doctor
after my Foot was not healing and
she cut some of the dead Skin
off my foot and said she would
see me the next week. And it
been at least three weeks ago and
my foot is not healing at all.
So Could I Please see the
Doctor concerning my Foot I don't
want to keep filling out Sick Call
which I have done. Plus I ask
the Nurse everyday to sign me
up to see the Doctor.
Thank you
Anthony Scanlon

# DAVIDSON COUNTY SHERIFF'S OFFICE
## GRIEVANCE RESPONSE FORM

To:                  GRIEVANCE COORDINATOR

          Date:    July 11, 2017

From: Investigating Officer:    AMANDA BUCHANAN

      Position:    AHSA

Re:           Inmate:    STANTON, ANTHONY

          CIS No    831872

          OCA No    60501

  Functional Area:    Medical

          Officer:

    Grievance No:    222115

     Description:    Poor Medical Attention

       Response:    After reviewing your grievance dated 6.30 stating that you should have already seen a provider, you are correct. You last saw a provider on 6.5 and should have had a follow-up within 2 weeks regarding you foot ulcer. You next follow-up occured on 7.4. That was past due. Grievance sustained.

Investigating Officer:                    Date:

          Inmate:                                Date:

SH00019
Rev. 1/99

ORIGINAL/ORIGINAL ☑       APPEAL/APELAR ☐

Name/Nombre: _Robin Shields_       OCA/OCA: _____

Facility and Cell/Facilidady Celda: _____

## Rules/Reglas

1. Grievances should be submitted within seven (7) calendar days of the occurrence.
   Las quejas deben ser sometidas dentro de siety (7) dias de calendario de la ocurrencia.
2. The issue being grieved must affect the inmate filing the complaint. If it does not, the grievance will not be processed.
   La persona afectada por el incidente es la personal que debe llenar la forma. De no ser asi, la queja so sera procesada.
3. Duplicate grievances will not be processed. An inmate is allowed to submit no more than one grievance for any incident.
   Más de una queja para el mismo incidente no sera procesada. Un preso es permitido someter no más de una queja por cada incidente.
4. Grievances with vulgar or inappropriate language will not be processed.
   Quejas con palabras vulgares o lenguaje inapropiado no serán procesadas.
5. If more than one inmate files a grievance about the same incident, the responses may be consolidated. If so, it will be noted on the response.
   Si más de un preso archiva una queja acerca del mismo incidente, las respuestas pueden ser consolidadas. Si eso es el caso, sera notado en la respuesta.
6. An appeal should be submitted within no more than five (5) days after notification of the original response.
   Una apelación debe ser sometida dentro de no más de cinco (5) días después de la notificación de las respuesta original.
7. Grievances and appeals must be placed in the designated grievance box by the inmate.
   Las quejas y apelaciones deben de ser colocadas en la caja designada de quejas en la celda.

_____                    _7/17/17_
Inmate's Signature                          Date Signed

Details: _This grievance is for Poor Medical_
_attention. It is Cruel, Inhuman punishment_
_treatment the way medical is handling_
_my medical needs. I seen the N/P on 7/13/17_
_and she enter me some pain medicine_
_and moved my insulin up to a higher_

dose. She also order me soaking my foot once a day which I have not recieve but a couple of times since 7/13/17.

After me missing my medication for pain a couple of times at pill call I brought to the nurses attention that I was seen by the N/P and she had put me on a new order. I have recieve my pain medicine and I have had two foot soaks and today is 7/14/17. I told nurse Shade today which is 7/16/17 two times I needed my foot soak and she told me two times that she would bring it back to me which she never did. I have not recieve my higher dose of insulin yet. My sugar has been runing high because of the infection in my feet.

Thank you

Amly Foster

# DAVIDSON COUNTY SHERIFF'S OFFICE
## GRIEVANCE RESPONSE FORM

To:                GRIEVANCE COORDINATOR

            Date:   July 24, 2017

From: Investigating Officer:   AMANDA BUCHANAN

         Position:  AHSA

Re:           Inmate:  STANTON, ANTHONY

          CIS No  831872

         OCA No  60501

Functional Area:  Medical

         Officer:

Grievance No:  222505

Description:  Other

Response:  After reviewing your chart, you missed several foot soaks. Your pain medication was ordered "as needed". This means that you must request this. However, there were several doses not administered. Grievance sustained.

Investigating Officer:                    Date: 7. 24. 17

Inmate:                          Date:

SH00019
Rev. 1/99

ORIGINAL/ORIGINAL ☑    APPEAL/APELAR ☐

Name/Nombre: _Anthony Stanton_    OCA/OCA: _60501_

Facility and Cell/Facilidady Celda: _CDM_    _A1 bunk 39_

## Rules/Reglas

1. Grievances should be submitted within seven (7) calendar days of the occurrence.
   Las quejas deben ser sometidas dentro de siety (7) dias de calendario de la ocurrencia.
2. The issue being grieved must affect the inmate filing the complaint. If it does not, the grievance will not be processed.
   La persona afectada por el incidente es la personal que debe llenar la forma. De no ser asi, la queja so sera procesada.
3. Duplicate grievances will not be processed. An inmate is allowed to submit no more than one grievance for any incident.
   Más de una queja para el mismo incidente no sera procesada. Un preso es permitido someter no más de una queja por cada incidente.
4. Grievances with vulgar or inappropriate language will not be processed.
   Quejas con palabras vulgares o lenguaje inapropiado no serán procesadas.
5. If more than one inmate files a grievance about the same incident, the responses may be consolidated. If so, it will be noted on the response.
   Si más de un preso archiva una queja acerca del mismo incidente, las respuestas pueden ser consolidadas. Si eso es el caso, sera notado en la respuesta.
6. An appeal should be submitted within no more than five (5) days after notification of the original response.
   Una apelación debe ser sometida dentro de no más de cinco (5) días después de la notificación de las respuesta original.
7. Grievances and appeals must be placed in the designated grievance box by the inmate.
   Las quejas y apelaciones deben de ser colocadas en la caja designada de quejas en la celda.

_Anthony Stanton_    _7/27/17_
Inmate's Signature    Date Signed

Details: _I AM SORRY I have to keep writing these grievances on poor medical attention. This has been going on for months and I cannot understand why I have not been to the outside doctor concerning my foot. I do not want to lose my foot ore any part of it when_

it should have never got this bad.
Now since I have been doing what
the N/A tell me to do my foot got
worst. All I ask is to see some
one that can figure out what to
do to cure my foot. I know it is no
one fault for me being here but I am
suspose to get the right medical
attention concerning my foot.
Especially me being a diabetic.
Couple of the N/A gave me the
right attention if there orders
would have been follow out like it
should have been by the nurses.
I just hope and pray that somethin
is done before I go to T.D.C.C.
where I don't have to go through
a new process. I thank you for
everything you have done Amanda
Buchanan and I am very sorry
for me writing these grievances.
But I seen the N/A 7/13/12 and she
said she want to see the next week
for sure to cut more of the dead skin
off. Also to see how bad the
infection was and the swelling.
It is 7/27/12        Thank you!

# DAVIDSON COUNTY SHERIFF'S OFFICE
## GRIEVANCE RESPONSE FORM

To:               GRIEVANCE COORDINATOR

Date: August 14, 2017

From: Investigating Officer: M. STEPHENS

Position: HSA

Re:

Inmate: STANTON, ANTHONY

CIS No 831872

OCA No 60501

Functional Area: Medical

Officer:

Grievance No: 222703

Description: Poor Medical Attention

Response: Sir - A review of your record reveals you have been evaluated and treated by a specialist and you have a follow up pending.   CDM  1A1 A1   1-39

Investigating Officer: _M Stephes_      Date: 8-14-17

Inmate: _____      Date: _____

First Copy - Adminstrative File

SH00019
Rev. 1/99

p

ORIGINAL/ORIGINAL ☑    APPEAL/APELAR ☐

Name/Nombre: _Anthony Stanton_ OCA/OCA: _00501_

Facility and Cell/Facilidady Celda: _CDCM B1 bunk 43_

### Rules/Reglas

1. Grievances should be submitted within seven (7) calendar days of the occurrence.
   Las quejas deben ser sometidas dentro de siety (7) días de calendario de la ocurrencia.
2. The issue being grieved must affect the inmate filing the complaint. If it does not, the grievance will not be processed.
   La persona afectada por el incidente es la personal que debe llenar la forma. De no ser asi, la queja so sera procesada.
3. Duplicate grievances will not be processed. An inmate is allowed to submit no more than one grievance for any incident.
   Más de una queja para el mismo incidente no sera procesada. Un preso es permitido someter no más de una queja por cada incidente.
4. Grievances with vulgar or inappropriate language will not be processed.
   Quejas con palabras vulgares o lenguaje inapropiado no serán procesadas.
5. If more than one inmate files a grievance about the same incident, the responses may be consolidated. If so, it will be noted on the response.
   Si más de un preso archiva una queja acerca del mismo incidente, las respuestas pueden ser consolidadas. Si eso es el caso, sera notado en la respuesta.
6. An appeal should be submitted within no more than five (5) days after notification of the original response.
   Una apelación debe ser sometida dentro de no más de cinco (5) días después de la notificación de las respuesta original.
7. Grievances and appeals must be placed in the designated grievance box by the inmate.
   Las quejas y apelaciones deben de ser colocadas en la caja designada de quejas en la celda.

_____          _8/25/17_____
Inmate's Signature                        Date Signed

Details: _It is inhuman, cruel punishment_
_the way I have been treated since 8/16/17_
_until 8/24/17. I was moved from A1 to_
_B1 for some reason and I cannot find out_
_why. LT Hedges came in and made_
_everyone turn in there laundry on_

SH9018A
Rev. 09/16/2010

8/19/17 and said it would return
as soon as it was wash. They took
a list of all our whites and said
we would get all of them back. The
need laundry return 8/24/17 and
I did not recieve done of my property
back. I need my Thermal Top 2X I
am a diabetic and I stay cold all
the time plus I pay for them. It
is 8/24 and Went to reck and got
hot and sweatie and upon my
return I ask the pod officer could
I go up front and take a shower
because we have no hot water in
B pod and haveint had done for a
month now. The pod officer said I
will see what I can do and I told
him you are runing showers, I need
to go where I can put my new bandage
on my feet. About thirty mintures
later the pod officer said I have a
out side doctor appointment. I said
sir there is no way I am going with
out a shower and a new jump suit
I said look how sweatie I am
and look at my jump suit I said
I have had the same jump suit

on for five days days new. I said
I have one pair of boxers, one pair
of socks, and one T-Shirt for
for four days new. I said how
could Any one think I would go
to the out side hosiptal looking
and smelling like this. He said
let me call and fine out what
they want to do. They said I
refused but did not say why
and I said I want to talk to the LT
I seen the LT at diabetic call
and ask him if I could talk to
him. He said your the one that
refuse to go to the doctor I said
sir I havent had a shower for
three days and I went to reck
and got hot and sweatie. I said
I have had the same jump suit on
for five days and the same whites
I said your house dog get treated
better than this. He said I didnt
put you here and I said no
sir you didnt but i do have
rights. He throw his hand in

To Whom it may Concern

I hope and pray that when you
receive this letter it fines you
and your family in best of health
and sprit.

Anthony Stanton OCA 60501

I hope i can get a response from
someone concerning my grievance
I filed 8/25/17. I was shipped
before I got a grievance response
back and I would like do know
what the response was, I hope
who ever will write me back
letny me get a copy of my
Grievance Response.
Hopefully I will here from
you soon.

Anthony Stanton
# 208310
1045 Horseheads Rd
Pikeville, Tenn 37367