IN THE UNITED STATES DISTSRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANTHONY STANTON, ) | |
|     Plaintiff, ) | |
| ) | Case No. 3:18-cv-00378 |
| v. ) | Judge Campbell / Frensley |
| ) | |
| CORRECT CARE SOLUTIONS, INC., ) | |
| et al., ) | JURY DEMAND |
|     Defendants. ) | |

# REPORT AND RECOMMENDATION

## I.
## INTRODUCTION AND BACKGROUND

This matter is before the Court upon a Motion for Summary Judgment filed by Defendants Correct Care Solutions, LLC, Landen Thorpe, Sabrina Hodge, Stacie Novak, Lori Weber, Miakka Thompson, Julie Shorey, and Sabrina Cobb ("Defendants"). Docket No. 62. In support of their Motion, Defendants have contemporaneously filed a supporting Memorandum of Law, a Statement of Undisputed Material Facts, the Affidavit with Exhibits of Melinda Stephens ("Stephens Aff."), and "the Record as a Whole." Docket Nos. 62-1 – 64.

Plaintiff has filed a document titled "Affidavit of Anthony Stanton Asking the Court to Dismiss the Motion for Summary Judgement [*sic*] Filed by Correct Care Solutions" (Docket No. 70), which is not an Affidavit, but rather, is what the undersigned will construe as Plaintiff's response to Defendant's Statement of Undisputed Material Facts. Plaintiff has also filed a document that he titled as a "Memorandum of Support," that the undersigned will construe as his Response to the instant Motion and statement of additional facts. Docket No. 71.

Defendants have filed a Reply to Plaintiff's Response, a "corrected" supplemental Affidavit of Melinda Stephens, and a Response to Plaintiff's statement of additional facts.

Docket Nos. 75, 77, 78.

Plaintiff filed this pro se, in forma pauperis action pursuant to 42 U.S.C. §1983, alleging that Defendants violated his Eighth and Fourteenth Amendment rights by failing to provide him adequate medical care for his foot while he was incarcerated. Docket Nos. 1, 4. Plaintiff avers that as a result of the inadequate medical care he received for his foot, his ability to walk without "suffering, pain, and humiliation" has been limited. *Id.* Plaintiff sues Defendants in their individual and official capacities, seeking declaratory and injunctive relief, as well as damages. *Id.*

For the reasons set forth below, the undersigned finds that there are no genuine issues of material fact and that Defendants are entitled to a judgment as a matter of law. Accordingly, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 62) be GRANTED.

## II.
## UNDISPUTED FACTS[1]

In April of 2017, Plaintiff was in the custody of the Davidson County Sheriff's office. Docket No. 1. The Plaintiff is diabetic. *Id.* On April 22, 2017, Plaintiff filed a health care request asking to be taken off of the medication Nortriptyline so that he could pursue placement in drug court. Exhibit A to affidavit of Melinda Stephens, CCS000120.

On April 24, 2017, Nortriptyline was discontinued by NP Lori Weber, which was noted by Julie Shorey. Exhibit A to Affidavit of Melinda Stephens, CCS000125. Also, on April 24, 2017, Plaintiff completed a health care request complaining of a sore on his right foot and an ingrown toenail; this was triaged on April 26, 2017. *Id.* at CCS000123.

---

[1] Unless otherwise noted, the following Facts are in a form required by Fed. R. Civ. P. 56 and are undisputed.

2

On April 25, 2017, Plaintiff discussed his neuropathic pain medications with RN Batey. *Id.* at CCS000127. Plaintiff expressed that he was certain that with prescribed Mobic and Tylenol, he would be "alright." *Id.* On April 26, 2017, Plaintiff refused Lisinopril and April 26, 2017. *Id.* at CCS000128.

Plaintiff's foot wound was observed on April 26, 2017 and it was noted that he had an upcoming appointment with NP Dave Miller. *Id.* at CCS000129. Plaintiff received wound care for his left foot on April 27, 28, 29, 30, and May 1, 3, 4, 5, 6, and 7. *Id.* at CCS000130 and CCS000132.

On May 4, 2017, Plaintiff was evaluated for a plantar lesion to the 4th and 5th toes of the right foot. *Id.* at CCS000133-CCS000134. NP Dave Miller noted that the lesion was black and calloused, but the skin was intact. *Id.* NP Miller recommended Hibiclens and water soaks for 21 days, for 20 minutes each, with Vaseline applied to the affected area after the soak. *Id.* at CCS000135. NP Miller indicated Plaintiff's family could bring outside diabetic shoes. *Id.* at CCS000134-CCS000139.

Dr. Kenneth Wilkins, M.D., ordered Mobic and Tylenol on May 5, 2017. *Id.* at CCS000141.

A treatment log shows treatment occurred on May 5 through May 8, 2017 and May 10 through May 25, 2017. *Id.* at CCS000139. It was noted that Plaintiff refused Vaseline on May 24 and 25, 2017. *Id.* at CCS000142.

Per the "Wound Care Flowsheet," Plaintiff administered self-care on May 8 and May 9, 2017. *Id.* at CCS000143.

Plaintiff refused Aspirin and Lisinopril on May 15, 19, 20, and 21, 2017. *Id.* at CCS000148, CCS000150, CCS000152, CCS000153.

On May 23, 2017, Dr. Kenneth Wilkins, M.D., provided medical care due to Plaintiff's medication noncompliance in refusing Aspirin and Lisinopril. *Id.* at CCS000155. Dr. Wilkins noted Plaintiff's history of diabetes and plantar lesion in the 5th metatarsal region. *Id.* It was noted that Plaintiff's family had not brought his diabetic shoes. *Id.* at CCS000154. Dr. Wilkins noted an open lesion on the 5th metatarsal region with pustular discharge and erythema. *Id.* at CCS 000156. Plaintiff was prescribed Bactrim, Tramadol, and continued Tylenol and Mobic. *Id.* at CCS000158-CCS000161, CCS000163-CCS000165. Daily wound care was ordered. *Id.* Plaintiff was advised to be compliant with Lisinopril and Aspirin. *Id.* A right foot x-ray was ordered. *Id.* Plaintiff underwent the ordered x-ray on May 24, 2017, which reflected degenerative changes at the first metatarsal phalangeal joint, but no osteomyelitis. *Id.* at CCS000167.

Dr. Wilkins performed a chart review on May 26, 2017 to allow Plaintiff to forego leg cuffs in court, in order to use crutches. *Id.* at CCS000168-CCS000170.

Plaintiff received wound care on May 27, 28, and 29, 2017. *Id.* at CCS000166. It was noted that Plaintiff administered self-care on May 30 and 31, 2017. *Id.*

Plaintiff refused a dental exam on May 30, 2017. *Id.* at CCS000172-CCS000173.

Plaintiff received wound care on June 2, 3, 4, 6, and 7, 2017. *Id.* at CCS000174.

On June 5, 2017, Plaintiff was noted to have a diabetic multilayer foot ulcer with a thickened callus. *Id.* at CCS000184. Plaintiff was noted to be improving, and Nurse Weber indicated a plan of diabetic ulcer debridement in one week, after Betadine foot soaks. *Id.* at CCS000185. Plaintiff underwent the ordered Betadine foot soaks on June 5, 6, 7, 8, 9, 10, and 11, 2017. *Id.* at CCS000176-CCS000177.

On June 7, 2017, Dr. Wilkins again ordered Tylenol and Mobic. *Id.* at CCS000190-

CCS000192.

On June 13, 2017, Plaintiff requested renewal of Nortriptyline for chronic back pain, and he was advised that he had a chronic pain appointment scheduled for June 28, 2017. *Id.* at CCS000178, CCS000182.

On June 18, 2017, Plaintiff completed a health care request, indicating he wanted to see the doctor about his foot. *Id.* at CCS000193. Plaintiff was triaged on June 19, 2017. *Id.*

Additional Lisinopril was ordered by Dr. Wilkins on June 20, 2017. *Id.* at CCS000197.

On June 22 and June 27, 2017, Plaintiff refused medication. *Id.* at CCS000198, CCS000201. Also on June 27, 2017, Plaintiff completed a health care request, which was triaged the same day. *Id.* at CCS000199. Plaintiff was out on recreation at the time of his scheduled June 28, 2017 appointment. Stephens Aff., ¶ 34.

On June 30, Plaintiff refused Mobic, Tylenol, and Lisinopril. Exhibit A to Affidavit of Melinda Stephens at CCS000202.

On July 2, 2017, Plaintiff completed a health care request, indicating that his foot was getting bad and that he was sick to his stomach. *Id.* at CCS000203. Plaintiff was triaged the following day. *Id.* On July 3, 2017, RN Leah Ramos noted Plaintiff's report that his foot sore had chronic issues and smelled bad. *Id.* at CCS000209. RN Ramos did not note an infection at sick call, and Plaintiff was scheduled with a heath care professional for evaluation. *Id.* The same day, July 3, 2017, Plaintiff refused Lisinopril, saying "sick-my foot hurts & infected." *Id.* at CCS000211.

On July 4, 2017, Plaintiff received medical care from NP Miakka Thompson, who noted Plaintiff's complaints of a diabetic foot ulcer on the sole of his foot. *Id.* at CCS000215. Examination revealed a thickened callus, erythema, tenderness, and mild swelling. *Id.* at

5

CCS000216. Plaintiff had dried serosanguineous discharge with no odor. *Id.* A piece of hanging thickened callus plaque was removed. *Id.* Plaintiff was prescribed Mobic, Tylenol, and Doxycycline Hyclate, and Betadine foot soaks followed by dressing and wound care were ordered for 7 days. *Id.* at CCS000217-CCS000220.

On July 5, 2017, Plaintiff completed a healthcare request, indicating he was supposed to have something for pain, and that he could not rest. *Id.* at CCS000223. Plaintiff's request was triaged the same day, and on July 6, 2017, RN Leah Ramos provided a response that Plaintiff was seen on July 3, had a healthcare provider appointment on July 4, and that he was then-currently on Mobic and Tylenol for pain. *Id.* at CCS000223-CCS000224.

He underwent wound care, including Betadine foot soaks, on July 6, 7, 8, 9, and 10, 2017. *Id.* at CCS000212. On July 11, 2017, an outside referral to a podiatrist was initiated. Stephens Aff., Ex. B.

On July 12, 2017, Plaintiff refused Doxycycline and Lisinopril. Exhibit A to Affidavit of Melinda Stephens at CCS000226.

On July 13, 2017, Plaintiff received medical care from NP Lori Weber for his infected right foot ulcer, and it was noted that he had diminished sensation, bloody purulent drainage, and that his foot and ankle were warm to the touch. *Id.* at CCS000227-CCS000233. It was recommended that Plaintiff restart Tylenol #3 and undergo additional diagnostic testing, as well as daily wound care with foot soaks. *Id.* Another x-ray was ordered to rule out osteomyelitis. *Id.*

Additional wound care was completed on July 13 (self-care), 14, 15, 16 (self-care), and 17 (self-care). *Id.* at CCS000213. Plaintiff underwent Betadine foot soaks on July 14, 15, 16, 17, 18, 19, 20, 21, 22, and 23, 2017. *Id.* at CCS000235.

On July 14, 2017, an x-ray again reflected no osteomyelitis. *Id.* at CCS000237. Also on July 14, 2017, Plaintiff submitted a health care request, indicating he had not received pain medication, which was ordered the same day. *Id.* at CCS000238. Plaintiff refused the sick call July 16, 2017, as it had been taken care of. *Id.* at CCS000238, CCS000240.

Plaintiff received wound care on July 17 and administered self-care on July 18, 19, 20, 21, 23, 24, 25, 26, and 27, 2018. *Id.* at CCS000241, CCS000244, CCS000247. Plaintiff again refused Lisinopril on July 19, 2017. *Id.* at CCS000243.

Plaintiff's appointment with the outside provider was scheduled on July 20, 2017, for August 2, 2017. Stephens Aff., Ex. B.

On July 27, 2017, Plaintiff refused Lisinopril. Exhibit A to Affidavit of Melinda Stephens at CCS000249. Also on July 27, 2017, Plaintiff completed a health care request, requesting to see the doctor for the dead skin to be removed from his foot, so he could continue walking on it. *Id.* at CCS000248. Plaintiff's request was received and triaged the following day, when Plaintiff saw NP Melissa Cook, who indicated that Plaintiff's foot had serious drainage and odor and appeared to require debridement. *Id.* at CCS000248, CCS000250-CCS000261. NP Cook indicated that Plaintiff had a podiatry appointment the following week and she changed his antibiotic to Clindamycin. *Id.* at CCS000251.

Plaintiff received wound care on July 29 and 30, 2017; he refused treatment on July 31, 2017. *Id.* at CCS000262. Plaintiff also received wound care on August 1 and 2, 2017. *Id.*

On August 2, 2017, Plaintiff treated with Nashville Family Foot Care, PLLC. *Id.* at CCS000266-CCS000269. Podiatrist Nicholas Fussell recommended removal of all non-viable tissue to facilitate appropriate healing. *Id.* at CCS000267. Dr. Fussell indicated that Plaintiff would need to keep his foot dry and perform dressing changes every other day until his next

7

appointment, and he was prescribed Clindamycin for 7 days. *Id.* Dr. Fussell discussed the complications of diabetes and the importance of glucose control. *Id.* Plaintiff was requested to follow up in 3 weeks. *Id.*

Plaintiff refused medication on August 3, 2017. *Id.* at CCS000273. Plaintiff received wound care on August 3 (self-care), 4, 5, 6, 7, 8, 9, 10, 12 (self-care), 13, 14 (self-care), 15, 17 (self-care), and 18 (self-care), 2017. *Id.* at CCS000270, CCS000276, CCS000277, CCS000282. Plaintiff refused an x-ray and medication on August 12, 2017. *Id.* at CCS000279. Plaintiff again refused medication on August 15, 2017. *Id.* at CCS000280.

On August 16, 2017, Plaintiff received medical care from NP Daniela Cullen. *Id.* at CCS000284-CCS000289. Plaintiff stated that his foot was much better, with minimal drainage and no swelling. *Id.* at CCS000284. Plaintiff indicated that his blood glucose had improved, and he felt well overall. *Id.* It was noted that he should follow up with the podiatrist. *Id.* at CCS000287.

Plaintiff refused medication on August 17 and 18, 2017. *Id.* at CCS000292-CCS000293.

On August 18, 2017, Plaintiff followed up with NP Melissa Cook, and it was noted that he had improved and would follow up with podiatry in 3 weeks. *Id.* at CCS000295-CCS000299. Supplies were provided and Plaintiff administered self-care for his wound care on August 19, 21, 22, 23, and 24, 2017. *Id.* at CCS000300.

Plaintiff refused medication on August 20, 22, and 24, 2017. *Id.* at CCS000304-CCS000306.

Plaintiff's follow-up visit with the podiatrist was scheduled on August 21, 2017, for August 24, 2017. Stephens Aff., ¶ 69. On August 24, 2017, Plaintiff did not attend his outside appointment as scheduled. Exhibit A to Affidavit of Melinda Stephens at CCS000303. It was

noted that Plaintiff requested a shower and a new jumpsuit; Plaintiff was informed that his appointment would be rescheduled. *Id.*

Supplies were provided and Plaintiff administered self-care for his wound care on August 25, 26, 28, 29, and 30, 2017. *Id.* at CCS000307.

Plaintiff refused medication on August 28, 2017, and he refused treatment on August 29, 2017. *Id.* at CCS000310, CCS000311.

On August 31, 2017, Plaintiff refused a urine sample. *Id.* at CCS000316.

Supplies were provided and Plaintiff administered self-care for his wound care on August 31 and September 2, 3, and 4, 2017. *Id.* at CCS000315. Plaintiff received wound care on September 1, 2017. *Id.*

Plaintiff refused insulin on September 6, 2017. *Id.* at CCS000320.

Plaintiff's podiatry appointment was rescheduled for September 15, 2017; however, Plaintiff was transferred to a different facility on September 6, 2017. Stephens Aff., ¶ 76; Stephens Aff., Ex. C.

Photographs of Plaintiff's foot were taken on July 3, 2017. Supplemental Stephens Aff., Ex. A. Another photograph was taken on July 17, 2017, which showed improvement. *Id.* at CCS000378. Still another photograph was taken on August 17, 2017, which showed additional improvement. *Id.* at CCS000375. Additional photographs were taken on August 31, 2017. *Id.* at CCS000376-CCS000377.

CCS's policy is to schedule outside appointments with specialists when appropriate. Docket No. 64, ¶ 69. CCS does not handle security, nor does CCS handle or provide access to showers or jumpsuits. *Id.*, ¶ 70.

# III.
# LAW AND ANALYSIS

A. **Motion for Summary Judgment**

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56(c)(1) sets forth the requirement to support factual assertions as follows:

**(c) Procedures.**

**(1)** *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support that assertion by:

> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot

produce admissible evidence to support the fact.

B.     **Local Rule 56.01(c)**

With regard to responses to the requisite Statement of Undisputed Facts filed contemporaneously in support of a Motion for Summary Judgment, the Local Rule 56.01(c) provides:

> **c) Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. *Each disputed fact must be supported by specific citation to the record.*

C.     **42 U.S.C. § 1983**

1.     **Generally**

Plaintiff alleges violations of his Eighth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. Docket Nos. 1, 4. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and

made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326 (1941).

### 2. Eighth Amendment

#### a. Generally

The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel and unusual punishments" forbids punishments that are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

#### b. Deliberate Indifference to Serious Medical Needs

The State has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to those whom it has incarcerated. *Estelle,* 429 U.S. at 104.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle,* 429 U.S. at 104. This is true "whether the indifference is manifested by prison doctors in their

response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id*. at 104-05.

Not every prisoner's allegation of inadequate medical treatment, however, is a violation of the Eighth Amendment. *Estelle,* 429 U.S. at 105. For instance, courts have held that the accidental, inadvertent, or negligent failure to provide adequate medical care does not state such a claim. *Id.* at 105-06 (citations omitted).

Pursuant to Supreme Court precedent, the Sixth Circuit held, in *Hunt v. Reynolds*, that Eighth Amendment deliberate indifference claims must contain both an objective component, "that [plaintiff's] medical needs were sufficiently serious," and a subjective component, "that the defendant state officials were deliberately indifferent to the plaintiff's needs." 974 F.2d 734, 735 (6th Cir. 1992) (citations omitted).

In order to satisfy the objective requirement, the Supreme Court requires that an inmate demonstrate evidence of a current harm or evidence of a medical complaint or condition of confinement that "is sure or very likely to cause serious illness and needless suffering." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). Under the Eighth Amendment, inmate plaintiffs, must allege, at the very least, unnecessary pain or suffering resulting from prison officials' deliberate indifference. *Id*. (prisoner alleging that he suffered pain and mental anguish from delay in medical care states a valid Eighth Amendment claim). As for the subjective element, the Sixth Circuit has held that "a determination of deliberate indifference does not require proof of intent to harm." *Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir. 1993). There must, however, be a showing of deliberate indifference to an inmate's serious medical needs. *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988) (*citing Westlake v. Lucas*, 537 F. 2d 857, 860 n. 3 (6th Cir. 1976)). In fact, "[k]nowledge of the asserted serious needs or of circumstances clearly

indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citations omitted). The inquiry, therefore, according to the Sixth Circuit, is "[w]as this individual prison official aware of the risk to the inmate's health and deliberately indifferent to it?" *Thaddeus-X*, 175 F.3d at 402 (*citing Farmer v. Brennan*, 511 U.S. 825, 837, 844 (1994)).

### 3. Individual Capacity Claims

42 U.S.C. § 1983 does not permit the imposition of liability based upon *respondeat superior*. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S. Ct. 445, 454, 70 L. Ed. 2d 509 (1981). *See also, Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978); *Street v. Corrections Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996).

In order for a defendant to be held liable in his individual capacity, a plaintiff must demonstrate that that defendant personally condoned, encouraged, or participated in the conduct that allegedly violated his rights. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (citations omitted). *See also, Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984) (*citing Hays v. Jefferson County,* 668 F. 2d 869, 872-874 (6th Cir. 1982) (The supervisor must have "at least implicitly authorized, approved or knowingly acquiesced in" the misconduct.) Conclusory allegations are not enough. *See Street,* 886 F.2d at 1479. *See also, Anderson,* 477 U.S. at 257; *Nix v. O'Malley,* 160 F.3d 343, 347 (6th Cir. 1998); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990). Plaintiff must establish a "causal connection between the misconduct complained of and the official sued." *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).

### 4. Official Capacity Claims

In complaints alleging federal civil rights violations under § 1983, "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (*citing Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985)). *See also, Frost v. Hawkins County Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988). As such, when a public employee is sued in his or her official capacity, the claims are essentially made against the public entity. *Id*.

### 5. Correct Care Solutions, LLC ("CCS") Liability

Because the State has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to those whom it has incarcerated (*Estelle,* 429 U.S. at 104, 97 S. Ct. at 291), prison administrators bear the responsibility of delivering health services at each facility and must designate a specific health authority to provide health services to that facility. *West*, 487 U.S. at 55, 108 S.Ct. at 2259. In the case at bar, CCS is a private entity that contracts with the State to provide medical care to prison inmates. A private entity that contracts with the State to perform a traditional state function, such as providing medical services to prison inmates, acts under color of state law and may be sued under § 1983. *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). Thus, CCS is amenable to suit under § 1983.

In order for CCS to be subject to liability under § 1983, Plaintiff must plead allegations, *inter alia*, that an "official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom." *City of Canton* at 387-388; *Monell* at 690-691.

**D. The Case at Bar**

As an initial matter, although Plaintiff filed a document that the undersigned will construe as his Response to Defendants' Statement of Undisputed Facts, that document does not respond to Defendants' Statement of Undisputed Facts in the manner required by the Federal or Local Rules. Moreover, the additional "facts" contained in Plaintiff's submission that the undersigned construes as his Response and statement of additional facts, are conclusory, hearsay, or legal conclusions and therefore not "facts" that raise genuine issues under the Federal or Local Rules. It would, however, be inappropriate to grant Defendants' Motion solely on the ground that Plaintiff has failed to properly respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendants have met their burden under the appropriate summary judgment standards discussed above.

Because the violation of a constitutional right is a condition precedent to prevailing on a §1983 claim in any capacity, the undersigned will first examine whether Plaintiff's allegations have raised a genuine issue of material fact with regard to whether Defendants, in either their individual or official capacities, have violated Plaintiff's constitutional rights. As Plaintiff concedes and the medical records establish, it is undisputed that Plaintiff's sick call requests were answered promptly and Plaintiff received frequent medical treatment including examinations, x-rays, outside referrals, wound care, Betadine foot soaks, pain medication, and antibiotics including Doxycyline, Hyclate, and Clindamycin. *See* CCS000125-CCS000377. As

Plaintiff also concedes and the medical records establish, it is further undisputed that Plaintiff repeatedly refused medications that were prescribed for, and offered to, him and that he missed medical appointments. *Id.*

The Eighth Amendment guarantees adequate medical treatment, not the medical treatment of the inmate's choice; an inmate's desire for additional or different treatment does not state a cause of action for deliberate indifference under the Eighth Amendment. *Estelle*, 429 U.S. at 106-107. Plaintiff's disagreement with the medical treatment he received during his incarceration does not mean that either CCS or its employees were deliberately indifferent to Plaintiff's serious medical needs; to the contrary, the record establishes that CCS and its employees were responsive and provided adequate medical care. Accordingly, Plaintiff cannot establish the requisite underlying constitutional violation. Absent the requisite underlying constitutional violation, Plaintiff cannot sustain his § 1983 claims and Defendants are entitled to a judgment as a matter of law.

## IV.
## CONCLUSION

For the reasons discussed above, the undersigned finds that there are no genuine issues of material fact and that Defendants are entitled to a judgment as a matter of law. Accordingly, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 62) be GRANTED and that this action be DISMISSED WITH PREJUDICE.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of

service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**